## IN RE WELFARE OF GREGORY GORDON SCOTT.

244 N. W. 2d 669.

July 30, 1976—No. 46253.

*Mary Davidson Winter, Melvin B. Goldberg,* and *James P. Cullen,* Legal Assistance to Minnesota Prisoners, for appellant.
*Attell P. Felix* and *John E. Valen,* for respondents.

Heard before Todd, Yetka, and Scott, JJ., and considered and decided by the court en banc.

SCOTT, JUSTICE.

This is an appeal from the judgment of the District Court of Morrison County terminating the parental rights of Vernon Gordon Scott to Gregory Gordon Scott and transferring his legal custody to Homer and Doris Hiller, the maternal grandparents.

Vickie Hiller and Vernon Gordon Scott were married in October 1969 and divorced in April 1972. No children were born of the marriage. Within 6 months of the divorce, the couple began living together again. On June 25, 1973, Vickie Hiller gave birth to Gregory Gordon Scott. The child's birth certificate named Vernon Gordon Scott as the father.

The relationship between Vickie Hiller and Vernon Scott was filled with tumult. By February 14, 1974, they had once again separated. On that date, Scott confronted Vickie, who was in a car accompanied by Gregory and four of her friends, and demanded she return to him. When she refused to talk to him, Scott pursued them in his truck and fired a shotgun blast at the rear window of the vehicle in which she and Gregory were riding.

After a high-speed chase, Scott rammed the vehicle in which she was riding. He then got out of his truck and shot and killed Vickie, injuring Gregory with pellets in the head and face. Vernon Scott plead guilty to second-degree murder and was sentenced to from 3 to 40 years in the custody of the commissioner of corrections. He is appealing that conviction to this court.

Except for a brief period of hospitalization and a week with friends, Gregory Scott has been living with his maternal grandparents, Mr. and Mrs. Homer Hiller, since his mother's death. In September 1974, Mr. and Mrs. Hiller initiated proceedings to adopt the child. Incident to these proceedings, the grandparents petitioned to have the parental rights of Vernon Scott terminated.

The following issues are presented:

(1)   Was there sufficient evidence for the district court to affirm the order terminating Vernon Scott's parental rights?

(2)   Did the trial court err in admitting into evidence testimony regarding conversations with a deceased person?

1.   The governing statute for termination of parental rights is Minn. St. 260.221, which states in pertinent part that the juvenile court may, upon petition, terminate all rights of parents to a child where the parents' conduct is found to be "likely to be detrimental to the physical or mental health or morals of the child."

The findings of the county court, concurred in by the district court, are as follows:

"1.   On February 14, 1974, Vernon Gordon Scott, alleged father of the above child, fired a shotgun charge through the back window of a car occupied by said child, his mother and former wife of said father, and four other persons, wounding the driver of said car.

"2.   Said father then chased said car with his own vehicle at a high rate of speed until he overtook said car and rammed it from the rear.

"3.   Said father then got out of his vehicle, put the shotgun

through the window and shot said mother while she was holding the said child in her lap.

"4. That the said child and one other occupant of the car were wounded by the blast that killed the child's mother.

"5. That on February 19, 1974 said father was charged by the Hennepin County Grand Jury with murder in the first degree and two charges of assault.

"6. That on August 20, 1974, the said father withdrew a not-guilty plea and entered a plea of guilty to murder in the second degree.

"7. That on September 9, 1974, the said father was sentenced to imprisonment for a term of Three to Forty years and is presently incarcerated at the Minnesota State Prison, Stillwater, Minnesota."

The putative father argues that findings 3 and 4 should not have been considered by the court because they relate to a criminal conviction which is being appealed and that therefore any conclusions as to the nature of his act are premature. These findings of the trial court, however, are based upon testimony taken before that court at a separate hearing, not upon a transcript of the criminal proceedings, and are, therefore, appropriate factual determinations. Appellant insists that evidence regarding his act is insufficient to support a finding that he has engaged in conduct likely to be detrimental to the child. He points to the presumption that a parent is a fit and suitable person to be entrusted with the care of his child. In re Dependency of Klugman, 256 Minn. 113, 97 N. W. 2d 425 (1959).

In the instant case, however, respondents have more than adequately demonstrated conduct on the part of the appellant which justifies termination of his parental rights pursuant to Minn. St. 260.221(b) (4). In re Petition of Zerby, 280 Minn. 514, 160 N. W. 2d 255 (1968). Evidence was introduced at the hearing regarding the traumatic relationship between appellant and the child's mother, as well as the trauma to which the child himself was subjected by appellant during the shotgun killing of his

mother.[1] Appellant argues that the trial court's finding of incarceration does not justify a termination of parental rights. It is not the incarceration, but rather the conduct showing the volatile nature of his personality which resulted in his imprisonment, that justifies the termination of parental rights.[2] In the Interest of Jones, 34 Ill. App. 3d 603, 340 N. E. 2d 269 (1975), cited by appellant, is therefore distinguishable.

2. The testimony of several witnesses, according to appellant, was improperly admitted at the hearing to the prejudice of appellant. In particular, he objects to testimony by respondents regarding conversations with Vickie Hiller, deceased. Minnesota has limited the admissibility of testimony regarding conversations with a person now deceased in Minn. St. 595.04:

"It shall not be competent for any party to an action, or any person interested in the event thereof, to give evidence therein of or concerning any conversation with, or admission of, a deceased or insane party or person relative to any matter at issue between the parties, unless the testimony of such deceased or insane person concerning such conversation or admission, given before his death or insanity, has been preserved and can be produced in evidence by the opposite party, and then only in respect to the conversation or admission to which such testimony relates."[3]

Respondents argue that they are not "parties" in this matter

---

[1] Both In re Welfare of Zink, 269 Minn. 535, 132 N. W. 2d 795 (1964), and Stanley v. Illinois, 405 U. S. 645, 92 S. Ct. 1208, 31 L. ed. 2d 551 (1972), were complied with. See, also, In re Adoption of J. 139 N. J. Super. 533, 354 A. 2d 662 (1976).

[2] In re State in Interest of Valdez, 29 Utah 2d 63, 504 P. 2d 1372 (1973), cited by appellant, involved the question of whether children of an incarcerated man were dependent as defined by the legislature so as to give the juvenile court jurisdiction to issue an order regarding the children's custody. That court did not consider the question of what parental conduct is detrimental to the physical or mental health of a child.

[3] A list of articles criticizing dead man's statutes such as Minn. St. 595.04 is contained in In re Estate of Lea, 301 Minn. 253, 257, 222 N. W. 2d 92, 95 (1974).

because the only "parties" in a juvenile proceeding are the minor and his parent. They note that petitioners are not designated as parties in the statute outlining the rights of parties at the hearing on the termination of parental rights, Minn. St. 260.155, subd. 6. This is not persuasive. Mr. and Mrs. Hiller initiated the proceedings, adduced testimony, cross-examined witnesses, and have an interest in the subject matter of these proceedings. Furthermore, to hold that respondents are not parties would jeopardize the right of such persons to appeal as an "aggrieved person" under Minn. St. 260.291.

The statements of the deceased Vickie Hiller to which appellant objects were not made a part of the findings, and there is ample evidence in the record exclusive of this testimony to justify the district court's order. Therefore, the admission of this testimony was neither prejudicial nor grounds for reversal.

Affirmed.