*This opinion is nonprecedential except as provided by*
*Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A23-0632**

In the Matter of the Welfare of the Children of:
H. M. W., A. T. L., and G. W. A., Parents.

**Filed November 27, 2023**
**Affirmed**
**Bjorkman, Judge**

Otter Tail County District Court
File No. 56-JV-22-2542

Angela Sonsalla, Perham, Minnesota (for appellant-mother H.M.W.)

Michelle Eldien, Otter Tail County Attorney, Kathleen J. Schur, Assistant County Attorney, Fergus Falls, Minnesota (for respondent Otter Tail County Department of Human Services)

Schan Sorkness, Fergus Falls, Minnesota (for child)

Janice Amundson, Dalton, Minnesota (guardian ad litem)

Considered and decided by Worke, Presiding Judge; Bjorkman, Judge; and Ede, Judge.

**NONPRECEDENTIAL OPINION**

**BJORKMAN**, Judge

Appellant challenges the termination of her parental rights to two children, arguing that the district court clearly erred in its findings of fact and abused its discretion by determining that termination is warranted based on four statutory grounds. We affirm.

## FACTS

Appellant H.M.W. (mother) has two children born in 2012 and 2014. Child protection has been involved with the family since the younger child's birth, primarily because of mother's methamphetamine addiction and resulting pattern of abandoning the children. The children were first removed from mother's home from April to August 2020. Their second removal led to this proceeding.

On March 25, 2022, mother left the children with one child's father. She did not provide contact information and did not return. After 12 days, the father tried to enroll the children in school. He was unable to do so, and the school reported the situation to child protection. On April 8, the children were placed in emergency foster care because the father with whom mother left the children, admitted using methamphetamine and mother was absent. Respondent Otter Tail County Department of Human Services (the county) filed a petition alleging that the children needed protection or services and, four days later, the district court ordered the children be placed out of mother's care.

On May 5, mother met with the county, admitted ongoing methamphetamine use, and agreed to and signed a case plan. The case plan required mother to abstain from using mood-altering substances, submit to random drug tests, and complete a chemical-dependency evaluation and follow any recommendations. It also required her to provide safe and sober housing for the children, participate in supervised visits with the children, and remain law-abiding. At the next court hearing, the district court adjudicated the children in need of protection and services, approved the case plan, and ordered mother to comply with the plan.

Between May 5 and November 14, mother tested positive for methamphetamine or failed to test (for which the results were presumed positive) on at least 18 occasions. In late September, mother began inpatient treatment but was discharged three days later after leaving without staff approval. In November, she entered an outpatient treatment program that included sober housing. Since then, she has consistently tested positive for marijuana but not methamphetamine.

On October 28, the county petitioned to terminate mother's parental rights alleging four involuntary termination grounds under Minn. Stat. § 260C.301, subd. 1(b) (2022). A three-day trial took place in February and March 2023. When the trial concluded, the children had been out of mother's home for 443 days. The district court found clear and convincing evidence supports all four termination grounds: mother neglected her parental duties, mother is unfit to parent, the county's reasonable efforts did not correct the conditions leading to the children's out-of-home placement, and the children are neglected and in foster care. Minn. Stat. § 260C.301, subd. 1(b)(2), (4), (5), (8). The district court also determined that termination of mother's parental rights is in the children's best interests and did so.[1]

Mother appeals.

**DECISION**

Parents are presumed fit to care for their children. *In re Welfare of Clausen*, 289 N.W.2d 153, 156 (Minn. 1980). Accordingly, parental rights may be terminated only for

---

[1] The district court also terminated the parental rights of both fathers in this same proceeding. Neither father appeals.

"grave and weighty reasons." *In re Child of E.V.*, 634 N.W.2d 443, 446 (Minn. App. 2001) (quotation omitted). A district court may terminate parental rights if (1) clear and convincing evidence supports at least one statutory ground for termination, (2) the county made reasonable efforts to reunite the family, and (3) termination is in the children's best interests. *In re Welfare of Child of J.H.*, 968 N.W.2d 593, 600 (Minn. App. 2021), *rev. denied* (Minn. Dec. 6, 2021).

Mother challenges only the district court's determination that four statutory grounds support termination. We review an order terminating parental rights to assess whether the district court's findings address the statutory termination criteria and are supported by substantial evidence. *In re Welfare of Child of J.K.T.*, 814 N.W.2d 76, 87 (Minn. App. 2012). We review the district court's factual findings for clear error and its determination that there is a statutory basis for terminating parental rights for an abuse of discretion. *In re Welfare of Child of K.L.W.*, 924 N.W.2d 649, 653 (Minn. App. 2019), *rev. denied* (Minn. Mar. 8, 2019).

One of the statutory bases for termination is the failure of reasonable efforts to correct the conditions that led to the children's out-of-home placement. Minn. Stat. § 260C.301, subd. 1(b)(5). It is presumed that reasonable efforts have failed when (1) the child has been in out-of-home placement for at least 12 out of the prior 22 months; (2) the court approved the out-of-home placement plan; (3) the conditions leading to the out-of-home placement have not been corrected (which is presumed if the parent has not substantially complied with the court's orders and the case plan); and (4) the county made reasonable efforts to rehabilitate the parent and reunify the family. Minn. Stat. § 260C.301,

4

subd. 1(b)(5)(i)-(iv). "Reasonable efforts are made upon the exercise of due diligence by the responsible [county] to use culturally appropriate and available services to meet the individualized needs of the child and the child's family." Minn. Stat. § 260.012(f) (2022).

In detailed findings, the district court determined that the presumption applies here and, even if it did not, the record establishes that the conditions leading to the children's out-of-home placement have not been corrected. The district court found—and mother does not dispute—that the children had been out of mother's home for 443 days at the time of trial and that the court had approved the case plan. The district court also found that mother did not substantially comply with her case plan because she did not: abstain from the use of mood-altering substances, follow the recommendations of the chemical-use assessor, complete a parental-capacity evaluation, engage with community-based services through the county, visit the children, maintain consistent residency and employment, have consistent communication with the county, and remain law-abiding. In finding mother partially complied with the safe and sober housing requirement, the court noted that marijuana was used and distributed in the home where mother resides and that this housing would not be suitable for the children.

## I.    The district court's findings of fact are not clearly erroneous.

Mother argues that the district court clearly erred by finding that the county's efforts were reasonable and that she did not comply with her case plan. We address each argument in turn.

"[A] case plan that has been approved by the district court is presumptively reasonable." *In re Child. of T.R.*, 750 N.W.2d 656, 665 (Minn. 2008) (quotation omitted).

5

It is undisputed that the district court approved the case plan, with no objections or requests for additional services from mother. Accordingly, the plan's requirements and related services are presumptively reasonable. Still, mother contends that the county's efforts were not reasonable, particularly those related to chemical-dependency treatment. The record defeats this contention. Mother's case manager testified that the county repeatedly reached out to mother, recommending numerous inpatient treatment programs, offering transportation to drug testing, and continually stressing the urgency of complying with the case plan because of the length of time the children had been out of the home. Mother resisted these efforts. She rejected recommended treatment programs, refused transportation, and maintained only sporadic contact with her case manager. Moreover, mother identifies no legal support for her suggestion that failure to offer a particular service or to provide services in a particular way constitutes a failure to make reasonable efforts, and we have found no such authority.

The record likewise defeats mother's assertion that the district court clearly erred by finding that she did not substantially comply with the case plan. The condition that led to the children's out-of-home placement is mother's long-standing chemical dependency, primarily her methamphetamine addiction, which impacts the children's care and safety. For that reason, the case plan focused on abstinence from mood-altering substances and appropriate treatment. Mother completed only three days of recommended inpatient treatment, instead opting for an outpatient program six months into the case plan. She has not completed her chosen program. More importantly, she continues to use mood-altering substances. In addition, mother did not comply with the parenting-related aspects of the

6

case plan. She did not complete a parenting-capacity assessment. And she had not progressed to having unsupervised parenting time because her supervised visits did not come even close to the required 2-3 *weekly* visits, primarily because of her continued substance use. Mother's case manager, the guardian ad litem, and a foster parent all testified that while mother's supervised visits with the children were positive, they were minimal and inconsistent, often resulting in the children acting out afterward.

In sum, our careful review of the record reveals no clear error in the district court's findings that the county's efforts were reasonable and mother did not substantially comply with the case plan.

## II. The district court did not abuse its discretion by determining that termination is warranted based on the failure of reasonable efforts.

Mother contends that the district court abused its discretion by focusing on her past rather than the present circumstances in making its termination decision. She points out that marijuana use is now legal in Minnesota and asserts there is no evidence that her substance use has harmed the children. We are not persuaded. The fact marijuana use is no longer illegal does not change the fact it is a mood-altering substance. The case plan prohibits mother from using all such substances even if mother's treatment program and sober living facility do not. Mother's recurring problem has been maintaining sobriety in the community. Her inability to do so often resulted in her leaving the children with others under circumstances that directly impacted their well-being. We agree with mother that a district court must focus its termination decision on current conditions. *See J.K.T.*, 814 N.W.2d at 90. But the past informs the present. At the time of the trial, mother had not

even demonstrated sobriety in a controlled, sober environment. And, by failing to complete the parenting-capacity evaluation and maintain contact with the children through supervised visits, she had not demonstrated that she prioritizes the children's needs. Both mother's history and the circumstances that existed at the time of trial support the district court's decision to terminate her parental rights.

We do not doubt that mother loves the children and wants to care for them. But she is not in a position to do so. Based on our careful review of the record, we conclude that the district court did not abuse its discretion by terminating mother's parental rights based on the failure of reasonable efforts to correct the conditions that led to the children's placement under Minn. Stat. § 260C.301, subd. 1(b)(5).[2]

**Affirmed.**

---

[2] Because only one statutory ground is needed for termination, we need not address the district court's other three termination grounds. *In re Welfare of Child. of S.E.P.*, 744 N.W.2d 381, 385 (Minn. 2008). But we observe that the record appears to support the district court's determinations that mother has neglected her parental duties, she is unfit to parent, and the children have been neglected and in foster care. Minn. Stat. § 260C.301, subd. 1(b)(2), (4), (8).