# WOODRICH CONSTRUCTION COMPANY v. STATE AND ANOTHER.

177 N. W. (2d) 563.

May 29, 1970—No. 42215.

*A. Patrick Leighton, William M. Beadie,* and *Moore, Costello & Hart,* for appellant.

*Douglas M. Head,* Attorney General, *Richard H. Kyle,* Deputy Attorney General, and *John R. Murphy,* Special Assistant Attorney General, for respondent state.

*Thuet, Todd, Anderson & Collins* and *John J. Todd,* for respondent Century Fence Company.

Heard before Knutson, C. J., and Rogosheske, Sheran, Peterson, and Frank T. Gallagher, JJ.

PETERSON, JUSTICE.

Plaintiff, Woodrich Construction Company, made a general contract with defendant State of Minnesota in August 1965 for the construction of a portion of Interstate Highway No. 35 near Owatonna, and it contemporaneously made a subcontract with defendant Century Fence Company for the erection of certain signs along the right-of-way. While Century was in the process of performing according to the specifications of the original contract, the state decided to change the locations of some of the signs and to switch to so-called break-away signs. The crux of this dispute is which of the three parties is obligated to bear the cost of these construction changes.

The three parties understood that the additional work was not covered by the original contract, so a supplemental agreement was executed by Woodrich and the state on July 28, 1966. This agreement provided that the additional work would be performed without additional compensation. Woodrich claims that it executed the agreement, affecting work performed by Century, only upon the understanding that it was agreeable to Century. Woodrich maintains that it did so only because a representative of the state had falsely informed Woodrich that Century had reviewed the agreement and approved it or, in the alternative, because Century had in fact approved it. If the former were the fact, Woodrich would have a right to recover from the state for the additional compensation it would owe Century, free from the waiver in the supplemental agreement; if the latter were the fact, Woodrich would not reimburse Century, having committed itself to do so only if Century had not approved the supplemental agreement.

The factual basis for this alternative claim of Woodrich is found in the completely conflicting testimony concerning a July 27, 1966, meeting between Herbert Gauper, an employee of Century, and C. W. Christie, the state's project engineer for the portion of the highway construction subject to this contract. An additional factual issue, depending upon which version of

that meeting is credited, is the existence of any authority in Gauper to speak for Century to Christie.

Gauper and Christie had met each other before this July 27 meeting. Gauper, who was a Minnesota sales representative for Century, a Wisconsin-based company, had accompanied Joseph Tenke, Century's construction manager, at a meeting with Christie a month earlier, at which time the subject of sign changes had been discussed. Gauper had been directed by Century to visit Christie on July 27, since he was in that area at the time, to check on the progress of the project, but with no particular reference to the proposed changes in the work. This reference to these meeting is intended neither as a complete recitation of Gauper's duties nor as any assessment of Gauper's authority, for it merely gives the background for the conversation which occurred on July 27.

When Gauper unexpectedly appeared at his office, Christie handed him the proposed supplemental agreement which had just been prepared. According to Christie's testimony, he told Gauper that he was about to send the agreement to Woodrich for signature, but wanted Gauper's approval so that he, Christie, could tell Woodrich that Century had approved the agreement. The purpose for so doing was to avoid delay inasmuch as Woodrich would otherwise send it to Century for approval before signing it. Christie testified that Gauper did read the agreement and did approve it, wholly without any suggestion that he lacked authority to do so. In his subsequent transmittal letter to Woodrich, Christie wrote: "Mr. Herb Gauper, with Century Fence, was in my office today. I discussed this agreement with him. He said it was satisfactory."

Gauper, to the contrary, testified that when he was handed the agreement he told Christie, "As far as signing, and such, you will have to talk to Mr. Tenke, I have nothing to do with it," and that at one other point he (Gauper) had indicated he was not the man who could approve or disapprove the agreement. Gauper

testified, furthermore, that he never said the proposed agreement was satisfactory.

The trial court found that the state was not guilty of misrepresentation in obtaining Woodrich's consent to the supplemental agreement. This finding, as Woodrich notes, is an obvious determination that Christie's version of the conversation is accurate. The court next found, however, that Century did not agree to perform the additional work without additional compensation.[1] Woodrich points out that to make this latter finding the court must have assumed that Gauper was likewise telling the truth. Woodrich contends, therefore, that findings which in effect credit both conflicting versions of the same conversation are so patently inconsistent that they must be set aside.

We agree that it is difficult to reconcile the trial court's crucial findings of fact. The findings are not irreconcilable, however, if the court were deemed implicitly to have found that Gauper, in assenting to the agreement, had acted without either actual authority or apparent authority to bind Century. This would mean that the trial court credited Christie's version as to Gauper's expression of assent but Gauper's version as to his disclaimer of authority. Although the findings may be thus reconciled by implication, a finding so determinative of the ultimate conclusion should, in our view, be express and not implied. Findings of fact should include as much of the subsidiary facts as is necessary to disclose to an appellate court the basis upon which the trial court reached its ultimate conclusion. See, 2B Barron & Holtzoff, Federal Practice and Procedure, (Rules ed.) § 1127, p. 503. See, also, Mienes v. Lucker Sales Co. 188 Minn. 162, 166, 246 N. W. 667, 669; Lewis v. Lewis, 211 Minn. 587, 594, 2 N. W. (2d) 134, 138; In re Petition of Zerby, 280 Minn. 514, 516, 160 N. W. (2d) 255, 257.

---

[1] Based upon these findings, the court ordered judgment in favor of Century upon its counterclaim against Woodrich and dismissed Woodrich's action against the state.

We reverse and remand this case to the trial court solely for the making of findings of fact consistent with the present record and this opinion; and, if such other or further findings of fact may so dictate, for amended conclusions of law and order for judgment.

Reversed and remanded.