**Lori KLUBALL, Appellant,**

v.

**AMERICAN FAMILY MUTUAL INSURANCE COMPANY,**
**Respondent.**

No. A05–436.

Court of Appeals of Minnesota.

Dec. 20, 2005.

Wilbur W. Fluegel, Fluegel Law Office, Minneapolis, MN, and Gary L. Manka, Katz, Manka, Teplinsky, Due & Sobol, Ltd., Minneapolis, MN, for appellant.

Michael F. Barg, Taylor & Lance, Eden Prairie, MN, for respondent.

Considered and decided by SHUMAKER, Presiding Judge; KALITOWSKI, Judge; and HUDSON, Judge.

## OPINION

HUDSON, Judge.

On appeal from summary judgment in which the district court ruled in favor of the respondent underinsured motorist (UIM) insurer, appellant argues the district court erred in concluding that: (a) respondent's "timely notice" clause was enforceable under *Malmin*, when respondent failed to demonstrate prejudice from its lack of ability to intervene; and (b) appellant's *Schmidt* notice was fatally defective when appellant put forth sufficient evidence to create a genuine issue of material fact precluding summary judgment on the issue of prejudice. We affirm.

## FACTS

Appellant Lori Kluball's claim for UIM coverage arises from a two-vehicle accident in Eagan, Minnesota, on December 29, 1994. Denys Craven (also referred to as tortfeasor) struck the driver's side of appellant's vehicle at an intersection. Appellant brought a lawsuit against Craven on or before December 29, 2000, alleging that Craven's negligence was the direct cause of the accident. Appellant claimed she suffered injuries to her neck, shoulders, and back.

At the time of the accident, Craven's automobile liability insurance policy was with MetLife Auto & Home (MetLife). Craven's liability coverage was $50,000. On June 25, 2003, appellant and Craven executed an agreement for voluntary binding arbitration.

Appellant had an automobile policy with respondent American Family Mutual Insurance Group which included UIM coverage of $100,000/$300,000. The insuring agreement stated in part:

> You must notify us of any suit brought to determine legal liability or damages. If any lawsuit is brought to determine liability or damages, the owner or operator of the underinsured motor vehicle must be made a defendant and we must be notified of the lawsuit at the time it is commenced. We are not bound by any resulting judgment where we have not received timely notice of the commencement of the lawsuit.

Appellant did not notify respondent of the claim against Craven for a number of years. On September 11, 2003, appellant's attorney sent a letter to respondent notifying respondent that appellant had commenced a lawsuit against Craven. The letter purported to be notification of commencement of suit as required by *Malmin v. Minn. Mut. Fire & Cas. Co.*, 552 N.W.2d 723 (Minn.1996), stating that re-

spondent would be responsible for damages in its capacity as appellant's UIM carrier and advising that "there is a binding arbitration in front of a single arbitrator scheduled for September 16, 2003." The letter provided no specific information about the location of the arbitration, the identity of the arbitrator, or the liability limits on Craven's insurance policy with MetLife.

Appellant and Craven resolved their lawsuit in a binding arbitration on September 16, 2003. One week after the hearing, on September 23, 2003, the arbitrator found appellant's damages to be roughly $120,000 and awarded that amount to appellant.

On October 3, 2003, appellant's attorney again wrote to respondent informing respondent that Craven's liability insurance was capped at $50,000 and that appellant had agreed to a binding high/low arbitration. Referring to his letter of September 11, 2003, the attorney stated that he had previously provided *Malmin* notice of the pending suit. He enclosed a copy of the arbitration award and made a demand for payment of the award that exceeded Craven's liability coverage.

Pursuant to the arbitration agreement and the arbitrator's award, appellant executed a complete release and satisfaction of award on October 15, 2003. Following execution of the release, appellant's attorney wrote another letter to respondent on October 23, 2003. In that letter, he characterized MetLife's payment of Craven's $50,000 policy limit as a "settlement" and purported to give notice of a tentative settlement agreement pursuant to *Schmidt v. Clothier,* 338 N.W.2d 256 (Minn.1983). He also advised that respondent had 30 days in which to substitute its draft for the draft of MetLife. Appellant's attorney concluded by stating, "Assuming I hear nothing, the appropriate releases will be executed, forwarded and we will then turn our attention to collecting the arbitration award pursuant to the underinsured motorist endorsement."

Respondent declined appellant's request for UIM benefits by letter dated November 3, 2003. Appellant commenced a suit in contract against respondent for the remainder of the arbitration award. Respondent moved for summary judgment. Appellant filed a cross motion for summary judgment. The district court granted respondent's motion for summary judgment and denied appellant's motion. The district court did not determine if appellant provided notice under *Malmin* or *Schmidt,* reasoning that appellant failed to provide sufficient notice regardless of how the award is ultimately characterized. The court administrator entered judgment on January 13, 2005. This appeal follows.

## ISSUES

I. Did the district court err in concluding that appellant's claim was barred under *Malmin,* when respondent failed to demonstrate that it was prejudiced by the insufficient notice?

II. Did the district court err in granting summary judgment under *Schmidt,* when appellant introduced sufficient evidence to rebut the presumption of prejudice and create a genuine issue of material fact?

## ANALYSIS

■ On an appeal from summary judgment, this court asks two questions: (1) whether there are any genuine issues of material fact, and (2) whether the district court erred in its application of the law. *State by Cooper v. French,* 460 N.W.2d 2, 4 (Minn.1990). There is no genuine issue of material fact if "the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." *DLH,*

*Inc. v. Russ,* 566 N.W.2d 60, 69 (Minn. 1997) (quotation omitted). The existence of a genuine issue of material fact must be established by substantial evidence. *Id.* at 69–70. On appeal, we view the evidence in the light most favorable to the party against whom summary judgment was granted. *Fabio v. Bellomo,* 504 N.W.2d 758, 761 (Minn.1993).

Both parties agree that this appeal presents primarily legal questions to be reviewed de novo. Appellant argues, however, that there is a genuine issue of material fact regarding whether she rebutted a presumption of prejudice. Whether a presumption has been rebutted is generally a question of fact. *See, e.g., Feges v. Perkins Rests., Inc.,* 483 N.W.2d 701, 711 (Minn.1992) (noting that whether an employee rebutted response offered by an employer for firing the employee presents a question of fact).

## I

Appellant challenges the district court's conclusion that appellant's claim was barred under *Malmin v. Minn. Mut. Fire & Cas. Co.,* 552 N.W.2d 723 (Minn.1996), arguing that respondent failed to demonstrate that it was prejudiced by the untimely notice.

■ Before an injured claimant can pursue a UIM-benefits claim, she must first recover from the tortfeasor's liability-insurance policy. *Employers Mut. Cos. v. Nordstrom,* 495 N.W.2d 855, 858 (Minn. 1993). She can do this either by (1) pursuing a tort claim to a conclusion in a district court action, or (2) settling the tort claim for "the best settlement." *Id.* at 857. If the judgment or settlement exceeds the liability coverage limits, the insured can pursue UIM benefits. *Id.* n. 3. If the insured pursues the "best settlement" option, prior to settling any claims with the tortfeasor, she must provide her UIM carrier with a 30–day written notice of tentative settlement agreements in order to give the underinsurer an opportunity to protect its potential right of subrogation. *Schmidt v. Clothier,* 338 N.W.2d 256, 263 (Minn.1983).

Here, the district court did not determine whether appellant's arbitration award constituted a settlement or a conclusion of a tort action in lieu of a jury verdict. Instead, the court concluded that appellant was prohibited from seeking UIM benefits under either characterization. If the arbitration award was characterized as the conclusion of a tort action, appellant's claim failed because appellant failed to provide sufficient "timely notice" of commencement of suit as required by respondent's policy. If the arbitration award constituted a "best settlement," appellant failed to provide the requisite 30–day notice of appellant's intention to settle.

■ We note that an insured must characterize an arbitration award as either a settlement or a conclusion of a tort action and may not rely on both characterizations when pursuing UIM benefits. But because the district court did not determine the appropriate characterization, and because appellant's arguments fail under either characterization, we will address appellant's arguments under both characterizations.

■ Assuming that appellant's arbitration award was obtained in lieu of a jury verdict and the issue is appropriately examined under *Malmin,* appellant argues that (1) the "timely notice" provision of respondent's UIM policy is void as against public policy, and (2) public policy supports binding respondent to the results of a good faith liability arbitration that was secured at arm's length when respondent has not demonstrated prejudice.

In *Malmin,* the insured obtained a judgment against an underinsured motorist and sought UIM benefits from his insurer. 552 N.W.2d at 724. The insurer denied coverage because the insured had not complied with provisions in the policy that required both notice to the insurer of a potential UIM claim and the insurer's written consent to sue the tortfeasor. *Id.* The supreme court held that the consent-to-sue clause was void and unenforceable under the No–Fault Act. *Id.* at 728. In a footnote, the supreme court noted that this holding did not invalidate the notification provision in the insurer's policy:

> [W]hile a "consent to sue" clause is invalid under the No–Fault Act, a provision within an insurance contract which requires the insured to notify his or her insurer of the commencement of a lawsuit against a tortfeasor within a limited period of time (*i.e.,* 60 days) after service of process comports with due process principles and does not raise the same concerns under the No–Fault Act. Such a provision would permit the insurer to consider the nature of the tort claim and the tortfeasor's liability limits, and thereby determine whether to attempt to intervene in the litigation in order to protect its own financial interests.

*Id.* at 728 n. 4.

Appellant argues that "[b]y requiring written notice of suit commencement, [respondent] is essentially requiring that it 'consent' to the suit in order to be bound by its damages determination." Appellant's argument lacks merit. The *Malmin* court clearly distinguished between notification and consent clauses; the former are permissible, the latter are not.

■ *Malmin* does not fully address appellant's second argument, however, that respondent failed to demonstrate that it was prejudiced by the lack of sufficient notification. According to appellant, re-

spondent's interests were adequately protected because MetLife employed qualified counsel whose interests were identical to respondent's. "As a general rule, an insured's breach of a policy provision ... will not lead to a forfeiture of insurance benefits absent a showing that the insurer has been prejudiced." *Hopkins by La-Fontaine v. Empire Fire Marine Ins. Co.,* 474 N.W.2d 209, 213 (Minn.App.1991). *Malmin* accepts that an insurer has a financial interest in an insured's lawsuit against a tortfeasor, but there is no subsequent case law interpreting *Malmin* that places the burden of demonstrating prejudice on either party.

*American Fam. Mut. Ins. Co. v. Baumann,* 459 N.W.2d 923 (Minn.1990) is instructive in assigning the burden of demonstrating prejudice. In *Baumann,* the supreme court held that when an insured fails to give the required 30–day notice of his intent to settle with a tortfeasor pursuant to *Schmidt,* release of the tortfeasor following settlement creates a rebuttable presumption that the underinsurer has been prejudiced because the underinsurer lost the opportunity to preserve its potential right of subrogation. *Id.* at 927. Thus, the insured must demonstrate by a preponderance of the evidence that the tortfeasor was a poor prospect for subrogation. *Id.; see also Elwood v. Horace Mann Ins. Co.,* 531 N.W.2d 512, 516 (Minn.App.1995).

■ As in *Baumann,* when an insured fails to provide notice of commencement of suit per *Malmin,* the underinsurer loses the opportunity to protect its financial interests by intervening. Accordingly, the burden is shifted to the insured to demonstrate by a preponderance of the evidence that either the underinsurer had sufficient opportunity to intervene despite the untimely notice, or the underinsurer's financial interests were not prejudiced by

the resulting judgment. Otherwise, the insured forfeits UIM benefits.

■ Here, there is no record evidence supporting appellant's suggestion that respondent was not prejudiced by appellant's untimely notice. Although MetLife may have qualified counsel, respondent's financial interest is the amount of damages beyond the liability cap of the tortfeasor's policy and, thus, MetLife's counsel did not protect respondent's financial interests. Appellant therefore failed to rebut the presumption of prejudice and there is a forfeiture of UIM benefits.

## II

■ Assuming that appellant's arbitration award constituted a "best settlement" and is appropriately analyzed under *Schmidt v. Clothier,* 338 N.W.2d 256 (Minn.1983), appellant argues that she put forth sufficient evidence rebutting the presumption of prejudice to create a genuine issue of material fact precluding summary judgment. As noted above, the supreme court in *Baumann* held that, when the insured fails to provide the 30–day written notice of a pending settlement as required by *Schmidt,* release of the tortfeasor creates a rebuttable presumption that the underinsurer has been prejudiced by its inability to protect its subrogation rights. *Baumann,* 459 N.W.2d at 927. The burden of demonstrating by a preponderance of the evidence the absence of prejudice shall be borne by the insured. *Id.*

■ It is undisputed that appellant did not provide *Schmidt* notice until after appellant executed the release. Attached to appellant's motion for summary judgment was an affidavit from her attorney stating that an "investigation conducted by your Affiant fails to disclose the availability of any meaningful assets of the tortfeasor which would have been available to [respondent] to seek subrogation against."

Appellant introduced no additional evidence of the tortfeasor's financial worth.

The statement in appellant's attorney's affidavit alone does not create a genuine issue of material fact on the issue of prejudice. In opposing summary judgment, "general assertions" are not enough to create a genuine issue of material fact. *Nicollet Restoration, Inc. v. City of St. Paul,* 533 N.W.2d 845, 848 (Minn.1995). Although *Baumann* did not clarify how much or what type of evidence is required to rebut the presumption of prejudice, this court examines the "financial status of the tortfeasor" including the "amount of assets held by the tortfeasor and the likelihood of recovery of those assets via subrogation." *Behrens v. Am. Fam. Mut. Ins. Co.,* 520 N.W.2d 763, 768 (Minn.App.1994), *review denied* (Minn. Oct. 14, 1994). In decisions by this court holding that an insured has fulfilled her burden of rebutting the presumption of prejudice, the insured introduced some evidence beyond an attorney's assurance of the tortfeasor's limited financial worth. *See Becker v. State Farm Mut. Auto. Ins. Co.,* No. C6–99–288, 2000 WL 1015867 at *2 (Minn.App. July 25, 2000) (holding that an insured who introduced an Equifax report assessing the nature and extent of the tortfeasor's assets and the testimony of an insurance adjustor who considered the tortfeasor a poor candidate for subrogation rebutted the presumption of prejudice), *review denied* (Minn. Oct. 17, 2000); *Anderson v. Auto-Owners Ins. Co.,* No. C2–96–614, 1996 WL 495064 at *3 (Minn.App. Sept.3, 1996) (holding that an insured who introduced evidence of the tortfeasor's assets and employment status created a genuine issue of material fact precluding summary judgment on the issue of prejudice), *review denied* (Minn. Oct. 29, 1996).

Appellant failed to introduce any specific evidence of the tortfeasor's financial worth

to rebut the presumption of prejudice. Therefore, the district court did not err in granting respondent's motion for summary judgment. Because we are affirming the district court's judgment, we decline to address whether appellant's arbitration agreement unambiguously evidenced appellant's intent to be satisfied by the tortfeasor's policy limits and not seek UIM benefits.

 Finally, appellant moved to strike an affidavit from respondent's appendix, referring to that affidavit as not properly before this court. The record on appeal consists of the papers filed in the district court, the exhibits, and the transcript of proceedings. Minn. R. Civ.App. P. 110.01. Respondent's affidavit was prepared after summary judgment in this matter. We will not consider this document for the first time on appeal. Appellant's motion to strike is granted.

### DECISION

Because appellant did not present any evidence that respondent was not prejudiced by appellant's untimely notice under *Malmin*, and because appellant failed to rebut the presumption that respondent was prejudiced by appellant's insufficient notice under *Schmidt*, the district court did not err in granting respondent's motion for summary judgment.

**Affirmed; motion granted.**